17-0554, Michael Hyatt v. Illinois Tool Works, Inc., and Mr. Devin C. Bruce v. Emily Tappalee v. Joseph Kent-Mathis. Good morning, counsel. Good morning. Mr. Bruce, you may. Good morning, justices. May it please the court, Devin Bruce on behalf of the plan, Mr. Mathison, counsel. We're here on an appeal of a summary judgment motion by the lower court. We've been here before. I have represented Mr. Hyatt for a long time at this point. If I may, I'd just like to kind of identify the three issues I think that this court has to address, wrestle with, wrangle and decide before it gets to the exclusive remedy defense. First and foremost, we believe that the lower court erred in not following the plain language of this court's previous ruling. And I fully embrace that there were multiple reasons that this court commented on the exclusive remedy defense and why it wasn't allowed to pursue that. There was the sua sponte ruling by the trial court. There was the raising it for the first time on the appeal. But I want to focus this court's attention on another reason. This court, and I say this respectfully and in a complimentary fashion, you write things for a reason. You included paragraph 106, Justice Enoff and the panel at that time for a reason. You went off and you spent some significant time and effort talking about how defendants make intentional strategic decisions. And it wasn't dicta. They haven't argued that, but it wasn't dicta. It was important. Is there any specific language in our mandate or in our opinion that discusses specifically whether ITW is barred from raising the exclusive remedy defense on remand? Not in the mandate, to my knowledge. And I haven't looked at it, so to my knowledge, I will concede that point. And in terms of on remand, I have several passages that I very much would like to emphasize to this court from the previous ruling. The first statement is after, if you look at the opinion, it's 104, paragraphs 104, 105, 106. I've read it several times. I could not find any such language. If you could point it out. Sure, absolutely. We agree with the plaintiff that it was error for the trial court to raise this sua sponte. That's the first statement. It's not a sua sponte. The next sentence I think is very important for my argument, at least, on the first issue of the did the previous ruling apply to the lower court's preclusion of them being able to raise this defense. The exclusive remedy provision is an affirmative defense and is forfeited if not timely raised. I'm answering your question, Justice. Then I go down to paragraph 106. Clearly, ITW made a strategic decision not to assert the exclusive remedy provision as a defense in the hope that it could avoid liability altogether by defeating plaintiff's tort claim. And then to the last, the culmination, in my opinion, Your Honor, respectfully, in terms of interpreting this Court's previous ruling, if ITW were permitted, this is the thaumaturgic language, to raise the exclusive remedy provision as a defense at this late stage, at this late stage, despite its earlier decision not to assert the defense, then plaintiff would be prejudiced. Would you agree that we did not address the exclusive remedy defense in Hyatt 1? Yes. And would you also agree that the law of the case doctrine is a doctrine to bar relitigation of an issue previously decided in the same case? Yes. When was the exclusive remedy ever decided in this case? No, respectfully, Your Honor, no, I like very much the second question. The second question is a key part of my comments to you today. Absolutely, unquestionably, all of us in this room are bound by the rule of law in the first decision. There's no question about it, and I embrace that. In your request for relief, which you're mandated to request in your appellate brief, did you request that ITW be barred on remand from raising the exclusive remedy defense? Don't remember, Judge. I recall that you did not. Okay. Well, I only point to the decision, Judge. I mean, look, you're raising an excellent point, and I love it. The point is that we're all bound in this room by what we said in the first decision. Like it or lump it, as they say in Ireland, we're all bound by that, right? And I'm going to get to this segue into my next argument, which I think is paramount and, in fact, is even more important than the first argument, which is the Loyola Academy factors. But before we get to that, doesn't the law of the case doctrine include not only explicit language but the doctrine of by implication? Sure, it does, Justice. And didn't the language in the paragraphs that you refer to, 105 or 106, at the very least imply? Justice, I don't think that anyone can come to a fair reading of your opinion in the first case without the conclusion that there were three reasons. And you specifically pointed out in talking about how it would be prejudicial and they can't raise it at this late stage. I mean, you said that. I mean, so, yes, I agree with you completely. But you went on to talk about the five years of litigation, they never raised it, 40 depositions. Right. And then you say at this late stage, you know, they can't do it. And this is just after you saying it, yeah. Right. Boilerplate with regard to appeal and what can and should be raised on appeal is contained in 107 and 108. But there wouldn't have been much reason to include 105 or 106 unless we were going beyond saying that it could be raised now on appeal. Isn't that what your point is? Absolutely. Yes, exactly. Justice, you wrote it for a reason. If I say you, I mean Hiawatha. You wrote it for a reason. I clerked for the Supreme Court. We had an issue that was, it was sua sponte. You can just dispose of it sua sponte. Justice Burke, I'm sure there are many opinions in which this court authors when the litigant, plaintiff, defendant, whatever it is, raises an issue for the first time on appeal. You dispose of the issue dispositively without going to all of the other issues. That's not what this court did. The law of the case doctrine and the case law discusses what is in the mandate, what is in the order of the court. Well, I think it's in the order of the court. I mean, that's the crux of that whole component of my, I mean, that is my argument, Judge. I know that's your argument, but the trial court interpreted our opinion in a different manner, and she expressly stated the mandate does not preclude raising the defense. Yeah, she's wrong. I mean, that's your job is to, you know, right? I mean, she was wrong before, and I respectfully, yes. So if the issue in the present appeal is as simple as just looking at and determining what the trial, whether the trial court complied with our mandate, then isn't that ignoring or actually writing out the entire purpose of the by necessary implication aspect of the law of the case doctrine? It is, Justice, and I tried to convince the lower court of that, that we have to look at your opinion in totality, including this rule of law that you wrote in there, and I was overruled, which is what it is. I don't want to use up all my time on that. Well, let me just ask. I mean, you said it's rule of law. I mean, it's at best ambiguous what at this late stage means. I mean, I know what your argument is, because we put it in the majority opinion of all these things about the prejudice, which I point out in my dissent, nobody ever raised on appeal. I mean, you didn't argue in your first brief that it was improper for ITW to raise this for the first time on appeal, and you certainly didn't argue prejudice. I mean, this was put in there by the majority without really being raised. So I guess my question is, even if we say it's at best ambiguous what at this late stage means, how is that not dicta in this case? Because it really was never argued by anyone, and it is not central to the disposition of the case. I mean, the case basically turned on whether it was a sua sponte error, and you argued it was error for the court to sua sponte raise it, but, I mean, how is this not dicta? It's just something that was said in passing that was never argued by any of the parties. And I'm tying that into the loyal effectors because nobody's ever had a chance to argue the loyal effectors until you got back into the trial court. Okay. Why did they put it in there, then? That's my question. I mean, look. There's a lot of things that appellate courts and the Supreme Court puts in cases that is dicta. It's either arbitrary dicta or judicial dicta. This isn't a passing comment. This is paragraphs with law cited, with facts specific, with, I would suggest, an opinion. If ITW were committed to raise this exclusive remedy as a defense at this late stage, despite its early decision not to assert the defense, then plaintiff would be prejudiced. And also, I mean, we are now bound by that, and we're also bound by the strategic intentional decision. I mean, let's not forget that because that's going to go into my next argument. I really do want to get to this next argument because I think it will change the decision. I mean, that's why we have 616, which allows for liberal amendment pleadings. People can change their defenses from time to time. Now, granted, whether it's timely, you've got to go through all the loyal factors, which we're going to talk about. But, I mean, people do change their positions and change their defenses. Yeah, I want to talk about changing the opinions. I want to say changing their theories of liability. You know, I want to talk about that. As Justice Enum pointed out, the boilerplate language in paragraph 107 is from cases that discuss the reviewing court as limited to the issues discussed in the trial court. And that issue, the issue of the exclusive remedy defense, was never discussed by the parties, only by the trial court. And the trial court made clear on remand that the reason she raised it was because the defense had been raised by another party who eventually settled. Yeah, I don't know what her rationale was. It's clear from her comments that the reason she raised it was because the other defendant had raised the defense in a motion, and it was never really addressed because the case settled. Justice, I can't crawl into her thought process. That's what the record shows. That's what she said. She said after she was overruled and reversed. After she was overruled and reversed, when I pointed out that it was completely sandbagged, after I sat down, we went through five years, no one ever talked about this. Mr. Mathewson and I argued for an hour, and we had these big, thick briefs. And after all that, I sat down, and she read her opinion and said no genuine issue of fact as to any of the elements of the joint venture. And then she says, oh, and by the way, there's a whole other reason I'm dismissing it. That's what happened. And there's no dispute about that. After remand and after this Court's opinion, she provided an explanation. I can't agree or disagree, and I frankly don't think that that has any bearing on at least the issues I'm raising. I mean, the issues that I'm raising are, number one, and I really want to emphasize, there's one thing that Your Honors take away from my comments today is this. Before we get to the exclusive remedy defense, everyone agrees. Again, rule of law in this case, we said it from the very beginning, just as you said it from the Supreme Court decision in Doyle. The exclusive remedy provision is an affirmative defense and is forfeited if not timely raised. Okay, so that's the rule of law. That's the law in Illinois. That's what we're stuck with, right? You have to raise it. It's got to be an affirmative defense, and you have to timely raise it. Timely is the important here. So if you take nothing away from my comments other than this. This was summary judgment. This was not – timeliness is a term that you have to look at all the facts of a given case. Would you agree? Absolutely. There were 35 years. There were other defendants, multiple defendants. Everyone else settled except for ITW. And the case had still not yet been set for trial. This was summary judgment, correct? Justice, if we want to wait and let people litigate cases for years and years, take a roll of dice, lose, have an intentional decision. I mean, we're beyond that. That's an intentional strategic decision. Roll the dice and not get it, and then come back down and say, oh, well, now we'll raise a brand new defense. And make no mistake. I saw this in Mr. Matthewson's brief. We can talk about the timing, whether it was 10 years or 70. Look, the bottom line is there was no affirmative defense ever filed in this case, which is required, until 2016. Make no mistake about that. And when it was raised, it was raised in the alternative. That is, the third affirmative defense contained the language, in the alternative to its denial of the existence of a joint venture, to the extent the plaintiff alleges negligence on the part of ITW based on a joint venture with Western, ITW is immune from tort liability, et cetera, in accordance with 5A. Okay. So it was raised, even at the late stage, after our Hyatt 1 decision, in the alternative. Is there anything that would have precluded ITW from raising it in that very same language earlier in the case? Absolutely not. Since it was raised in the alternative? Absolutely not. And that, Justice, you bring up a good point. As a personal injury lawyer through and through for 25 years, this is how it works. Let me just tell you, practitioner, I file a complaint. If the defendants have a possibility of raising an exclusive remedy defense, if it's out there, when they file the answer in 30 years, you know, they get 45 days or whatever. As a practical, I'm just saying, you come in a little bit like, that's fine, whatever. They file their answer, and then they attack the affirmative defenses, and they're all these one-liners. Plaintiff was contributory. Negligent, plaintiff, all these. It's in there. They didn't do that. And we don't have to speculate why. We don't have to say it was an inadvertent. It wasn't. It was an intentional, strategic decision. So that, let me get to my, so. And you understand that our standard of review is abusive discretion? On which issue, Your Honor? On the issue of allowing the affirmative defense to be played. On that one, yes. Yes. I think, especially, I think this is an oval on your interpretation of your previous opinion, I believe. And what's your understanding of abusive discretion? Would any judge rule in the same fashion, essentially, correct me? Yeah, something, I mean, you know the standard. Given the facts of this particular case. Yes, exactly. So, I think we digress. If it's one thing to take away is, in order to get to the exclusive remedy defense, there's three issues you have to decide first. One, did our previous ruling apply to this? Two, did the trial court abuse its discretion in applying what is mandated, which are the four factors in the Loyola Academy versus SF Verhoeven case. I want to get to that. Because I submit to you that this court's previous ruling addresses all of those. Clark Blanche. I'm going to get to that. And then the last issue, and it's not a throw-in argument. When I was up there clerking, I always saw these people throw everything in the kitchen sink, so they didn't have this new issue. And this is not a throw-in argument. The issue of the Robito issue. I mean, how many bites of the apple are we going to give them? If you read Robito versus Oliphant, which is still a seminal case in Illinois about taking multiple bites of the apple and what an affidavit has to conclude, there was zero competent evidence attached to the motion for summary judgment after all of these shenanigans. After all of this, we get to 2016 from a 2007 occurrence. They file a motion for summary judgment with no affidavit, with no deposition testimony, with no authenticated documents. And you say, oh, Devin, no harm, no foul. You can just supplement. Read Robito versus Oliphant. The Supreme Court says, no, it's got to end. It has to end. It has to end. And I have that quotation in my brief. Trial courts should not permit litigants to stand new, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. And it continues. That's what the Supreme Court says. It's a reference to denial of a motion for summary judgment. Yes. And then adding affidavits and new facts. Yes. And I think that's helpful to me, Justice, because they didn't include any affidavit. At least the poor plaintiff's lawyer in there threw an affidavit in there and had some documents, not the right documents or whatever. There were inaccuracies in his 191 affidavit. Here they have nothing. I mean, they don't even dispute this. This trial court doesn't agree with me on anything. Nothing. She agreed with me on nothing, if I may finish. But the one thing she agreed with me on, the one thing is that basic 2105C, you've got to have competent evidence. And I know Mr. Mathews is going to come up here and he's a very skilled lawyer. He's going to say, oh, it really didn't matter. It was matters that would take judicial notice. No. No. The court can't take judicial notice of that plea. No. Not the stuff that he said. At least she didn't think so. I mean, she agreed with me on nothing. I mean, you have to have evidence. I mean, how many breaks are we going to give ITW? That's the question. I have a man who has two arms that were dramatically amputated. And they're raising a new issue. I mean, really, how many breaks are we going to give? No, seriously. I mean, that's what robodose stands for. So I've got three issues that this court, you know, logically thinking. Will you come in on the second issue, the Loyola issues, please, now? Yeah, absolutely. So here are the Loyola issues. We all know what the factors are. Number one, cure the defects. It's laughable, their response to that. And I'm saying that. I shouldn't say that in that context. But their response to curing the defect. There is no defect here. This court ruled that they intentionally decided to admit it. A defect is we've got some kind of problem or there was some kind of clerical mistake or something. Some defect. This is not a defect. This is a material omission of a defense that they're now saying this is a slam dunker. This is a slam dunker. Any defense would never technically cure a defect, though, in a plea. I mean, when you talk about curing a defect in a plea, you're talking about curing a defect generally in a plaintiff's plea, where there's something generally. But I think there's, I mean, I don't know. I have an absolute, I think we cited it for the defense as well. It's certainly a requirement under the Loyola Academy factors. I'm responding to their brief. Mr. Matthewson says in his brief that they cured the defect, that's what he says in his brief, by expressly now pleading the exclusive remedy provision. He didn't expressly do it, implicitly do it, or anyway do it. There's no curing. They decided not to pursue it, according to this court, and we're bound by that decision. Second issue, prejudice. Again, matter of law. I went on that as a matter of law. This court said we would be prejudiced if they pursued it. I don't need to get into a discussion. And this court, frankly, I think doesn't get into a discussion looking at it logically about, oh, what discovery does Devin need. I don't want any discovery. I want to get into a case to trial. I want to go to trial. But I don't need to sink into this discussion. They're taking us down a rabbit hole because this court's already ruled on prejudice. Talk about timeliness of doing it. Okay. I mean, why do we have the case? Why is Loyola Academy out there? You say everything's timely? I mean, really? It happened in 2007, and they filed 09, and we have 2016. When does it end? I mean, they took 12 or 14 months after remand to file. All they do is file one sentence. There's no explanation about why not. And for the first five years, they intentionally do it. How do we get to timeliness in that? Lastly, I think even Mr. Mathewson conceded, and if he didn't, I stand correctly on that last element of a clear amendment of pleadings. Was there a previous opportunity? I mean, clearly. So on all four Loyola factors I went. Now, we can throw them out the window and say, no, no harm, no foul. We're not at trial. I mean, because that's the next argument. Read them trial date. We're not at trial. Okay. All right. But what if I did that to him? Justice, what if I did that? What if I came in and took some issue, and then the judge, trial, let's say we're at the trial court, and I have a theory of liability, and they just struck it out entirely. And then after my fact discovery is closed for years, after I've disclosed I spent 20, 30 grand flying around meeting five different experts, in this case, coming back down, I've got an OSHA expert, I've got a physiatrist, I've got an economist. I'm spending all this money doing all this stuff. And then at the 11th hour, they say, oh, here's this defense. It's a brand-new defense. Don't make any mistake. Don't fall into that rabbit hole of saying, well, you knew about it. I didn't know about it. If I read this court's opinion. Did you request to reopen discovery? No, I don't want to reopen discovery, Justice. There's nothing new for you. Justice, there's nothing new. And that's why. Don't go. That's a red herring. Why do I want to reopen discovery? You've ruled on this. They can't. Okay. Well, I mean. The prejudice issue. You know, again, you know, I wrote the dissent. I know. So, I mean, we don't necessarily, at least in that opinion, see eye to eye on prejudice. Because nobody ever argued prejudice. I mean, shouldn't prejudice be argued in the first instance in the trial court with the loyal effectors, with everybody having notice? And as you did. You went in there. You argued them. You argued prejudice. The trial judge ruled against you. And we're going to rule whether that's correct or not. But, I mean, isn't that where it's supposed to take place? Not in this court. By this court making some statement about prejudice where nobody ever argued prejudice before. Justice, I have to go by what this court ruled. Well, I understand. And this court. I need to have a fair reading. It kind of gets back circles to whether it's dicta or whether it's an actual holding. Okay. We can see each other's point. A fair reading of this court's opinion is that there was a ruling. I don't have to keep rereading it to you. It's not dicta. It's an absolute ruling that if they were allowed to do that after five years and 40 depositions. It wasn't just one sentence. There's a discussion about this. It would be prejudice. That's what I'm saying. We don't get to that issue. That's the rule of law here. And respectfully, Justice, we're all bound by it. Now, okay. So I think if you apply those four loyalty factors on every single one of them, you've already ruled. And by new, I mean high of one. It was an intentional decision. The loyalty factors were not discussed. No, no. Justice, hear me out, please. Curing a defect, that loyalty factor was addressed, I suggest to you, when this court said it was an intentional decision. How can that be a defect if ITW is a multibillion-dollar corporation with very good lawyers? I'm making a decision not to pursue this defense. Explain to me how that's a curing of a defect. It's not. That's not what Soil Academy meant. So it's not a curing of a defect. I've already talked about the prejudice. There's no question on the other two. I don't need to take up your time. It's not timely. And it's not. I'm sorry. It's not. There were many, many opportunities in years. If we go on, we're not going to be able to get to all of our questions. You're already past time. Oh, I'm sorry, Justice. If we get to, if we address the issue, your argument is the exclusive remedy provision can't apply because there's no evidence that ITW paid or shared the cost for the workers' comp insurance. Yes. And if we were to do that, wouldn't we be legislating, reading into the law a requirement that is not required by the statute? I think if you start with Smith and you go to Iover and then you go to, and look, I know case, a joint employee case. I'm just citing it for the proposition. And you've got, there's this Burke case with Exline. There's a number of cases. The law clearly is pointing, Forsythe is a good one, Supreme Court case in Forsythe, which we cited. If you read it, they're all looking at the issue of whether there's a contribution to the work comp premiums. And I think the defense is worried about that issue in this case because in reading their brief again last night, I see where they're trying to suggest, well, actually there was, there wasn't. If you look at page 96, or paragraph 96 of this court's previous ruling, and then the kind of division of who was doing what, yes, they were both expending aspects of this. There's no question. But ITW provided the pallets, the fancy Formax formula, and the packaging labels. It didn't pay for labor. In this arrangement, Western Plastics paid for labor and the work comp premiums, which is all consistent with what, when I deposed Mr. Benson, I asked him, I was going through all the different types of expenses. I said, did you do the work comp premiums? He said, no. So, I mean, that's all consistent. I think they're worried about that. But, Justice, one last thing, you know, before we get, remember, there's three things I was talking about, is that motion for summary judgment. I think this Court has to reach and address all of those three issues before you get to the exclusive remedy. And you say, well, Devin, let's say, Justice Burkett, you're saying, well, Devin, aren't we legislating and don't you think that that's far behind? Let's embrace that. Justice, if there was a clear statute of limitations violation, absolutely, I got a simple lotto case, two-year statute of limitations, it's totally wrong. Four years, I filed a complaint four years later. Remember, it's directly analogous. It's what you said, Justice Zinoff and Arthur, in this opinion. It's an affirmative defense that has to be timely raised. You can't wait until the end of the hour to raise it. You can't. Same like statute of limitations. I mean, this is important. Okay. And I'll sit down with this. Is the rule of law in Illinois, is it going to be the rule of law of this Court that you literally allow a party to make an intentional decision, litigate for five years, 40 depositions, file a motion for summary judgment, never raise the issue, these are all non-disputed effects, and then lose on appeal, come back in 12 or 14 months later, raise that issue after plaintiff has been ordered to disclose to plaintiff's experts, and that discovery has been disclosed for years. Is that the rule of law? I suggest that it isn't. That's why we have Loyola. That's why, Justice Zinoff, you were very clear, I think, in authoring that opinion, talking about prejudice to the plaintiff. Please don't fall into the rabbit hole of starting to go down, and we're not here. And, Justice, you even pointed it out in your comments. You wrote the dissent. I'm not relitigating the first one. You've got time to hear it from me on the first time we were around, so I'll sit down. And thank you for all of your time. Thank you. No problem. Mr. Mathewson. May it please the Court. Good morning. Good morning. This case has been briefed in detail and we've had motion after motion after motion along the way of our second trip to this Court. But I think you can distill the issues in this case down to the examination of a single legal concept, and that's prejudice. And prejudice is not necessarily delay or timing or detriment to the plaintiff. Prejudice is an impairment or preventing the ability to respond to an issue. Did this Court rule on prejudice in Hyatt Ward? No. I think it ruled on prejudice with regard to the issue of the exclusive remedy provision being raised sua sponte by the appellate court. By the front court. By the front court, excuse me. And this Court determined that there was prejudice at that point. Because the issue had not been raised by the litigants, plaintiff didn't have the opportunity to respond to it. Well, we did say if ITW were permitted to raise the exclusive remedy provision as a defense at this late stage, despite its earlier decision not to, then plaintiff would be prejudiced. How is that not an affirmative statement of prejudice? At that time, in the context of the appeal. I realize it's your opinion. So you're talking about later. Correct. There's no discussion, because the issue was never raised, of whether there would be prejudice if that affirmative defense were to be asserted on remand going forward. Well, but counsel, that's an even later stage than we were at in Hyatt Ward. Correct. So if we said that the plaintiff would be prejudiced then, how could they not be prejudiced at this later stage, especially when it was asserted in the alternative? Because at a later stage, they would have an opportunity to respond, to pursue discovery, as they did, by the way. There were requests to admit that were filed and responded to after Hyatt won, directed to the payment issue on the workers' comp. So they did pursue some discovery, and I think it's telling that Mr. Bruce said he doesn't want any more discovery on this issue, because there's really nothing else. But they had already disclosed their 213 witnesses, experts. Isn't that correct? That's correct. And so none of that is prejudicial, the ones they chose and how they, the procedural posture they were in at that time and the decisions they were making, and then the affirmative, this new affirmative defense, and that doesn't put them in a position of being prejudiced? Not at all. Not at all. If they were, they could have requested the opportunity to disclose additional experts. There's never been a suggestion of what type of expert they need or whether there's another witness they need to depose, whether they need more discovery to respond to the exclusive remedy provision. It's a matter of law. Well, the trial court in its ruling on whether to grant plaintiffs' motion to strike this third affirmative defense said and recited that courts should permit amendment if it will further the ends of justice. How did this decision of the trial court further the ends of justice in this case, given the history? We've just been talking about the last half hour or so. Because it allows all of the applicable Illinois law to bear on this case. And because it might be to the detriment of the plaintiff, ultimately, that's not prejudice. There is justice for Illinois tool works on this also. Plaintiff is working on his sixth amended complaint. During the course of litigation, theories change, evidence is developed. The Illinois rules allow for liberal amendments to the pleas. Well, the sixth amended complaint didn't change the basic arguments, did it? No, it didn't in fairness. So it's not as if they came up with something new, correct? I don't think so, to be honest with you. Plaintiff, obviously, was on notice about the possibility of exclusive remedies defense at the conclusion of the hearing on the first summary judgment issue. Plaintiff has never offered any reason why it is preventive from responding to that. Because of the closure of discovery, because of the lack of experts, there's never been an explanation of how there's any prejudice to the plaintiff in this particular case. And I acknowledge that this might work to the detriment of the plaintiff, but under Illinois law, that is not prejudice. I asked this question to Plaintiff's counsel, Mr. Bruce. Did the plaintiff request in its brief in Hyatt 1 that ITWB bar from raising the exclusive remedy defense on remand? No. And that is getting to my next point about prejudice, is that issue was not before the court at that time. And just like the exclusive remedy provision shouldn't have been ruled on sua sponte, the question of whether that issue could be injected into the case later was never presented to the court. We never had an opportunity to discuss that, and it would be unfair to conclude that there was a ruling at that time going forward. Well, ITW contended at that time that the provision provided an alternative basis to affirm the entry of summary judgment in its favor. Didn't that signal to the court and everyone involved that it certainly didn't intend to raise it at any future date, if it urged the court to use it at that point, notwithstanding the fact that it hadn't been raised earlier? I mean, aren't they saying to the trial judge then, or weren't you saying to the trial judge then, doesn't matter, we didn't raise it, we want you to use this now, you raise it, judge, but that's fine. There's sufficient basis for you to use this as a basis to affirm to us, I'm sorry, for an alternative basis to affirm the entry of summary judgment. I don't think that's inconsistent, respectfully. We're talking about the issue of going forward with litigation, whether there would be prejudice to any party, if we added that affirmative defense. And there has been no indication from the plaintiff whatsoever, other than saying this is too late, that they are somehow prejudiced by that issue being injected into the case long before we ever get to a trial on this matter. So you're saying that the ITW strategy at that time was, well, we'll raise it, put all our eggs in the first basket of whether or not there was a joint venture, but if we lose on that, then we're going to go back and, in the alternative, raise this new affirmative defense? Yes. And so isn't that, in essence, this is used a little differently than counsel did, several bites at the apple? I mean, we lose on this theory, and now we're going to try a different theory, but, and this is 10 years later? How is that not prejudicial? It's the 10 years, because they keep hearing 10 years. It's all over the brief. There have been many twists and turns and procedural developments in this case, and we started out in Cook County and was moved here on form nonconvenience. So the 10 years sounds like a lot, but there's been a lot going on. And even in the time after remand, six amended complaints filed, there was a motion to bifurcate the case. A lot of things have been going on. We're on our second trip up here, so it's been a long and winding road. So I think the 10 years in and of itself is not significant. It's the procedural posture at the time. Back to your question. When I walked into the courtroom to argue the first motion for summary judgment, I was advised for the first time that the other three defendants, including the plaintiff's employer, had settled. Okay? Changes the whole landscape of the case. And in that settlement was also a settlement of the workers' comp claim. That changes things. We go up to the appellate court and learn that now there's a possibility of a joint venture. Our motion for summary judgment has been reversed. Another change in the posture of this case. There's a whole change in the landscape of this case, much of it precipitated by the plaintiff. And your position is parties adjust. That's exactly right. And, I mean, tactically, you might not have wanted to get involved in a workers' comp situation, but you might have been on the hook for that. And when you found out that was done, then you're free to raise this. And maybe Western comes after you. Maybe Western Carrier comes after you. But when you make that strategic decision at that time, with the understanding that when you file that amendment, you're subject to the loyal factors. The court may rule for you. The court may rule against you. That's correct. You take that strategic action. That's correct. And there's another wrinkle to this. Western Plastics, although they had filed the affirmative defense, they never really pursued it. They went through all the discovery in this case. They participated in the 40 depositions. It wasn't until the summary judgment one was filed that, in the courtroom that morning, they all agreed to a settlement. So all that discovery the counsel talks about was done before the other parties settled out. Correct. Including Western Plastics, the employer. And it would be speculation on my part to understand why they did what they were doing. If we were a joint venture, I might know, but I don't. But there must have been some infirmity in that exclusive remedy provision defense to them. Otherwise, why would you go through 40 depositions on all kinds of joint venture issues and everything? So another reason why we never filed that affirmative defense. The employer itself was not actively pursuing that defense at that time. Then there's a settlement, including a settlement of the comp case. Now we know we have that defense. And, again, the whole landscape of the case has shifted because of the plaintiff's decision to settle with all those parties. Did you file in the alternative? You can't prove joint venture in the alternative workers' comp in order to avoid perhaps a Foxcroft issue, where if you just said workers' comp, I'm putting all my eggs in that basket now, and the trial judge said, no, I'm not likely to do that because of whatever other reason, that's why you put it in the alternative? Or was there some other reason? I think it was the former, Your Honor. But, I mean, we always assumed, and I still believe strongly, that plaintiff can never prove a joint venture in this case. I thought our motion for summary judgment was sound. Obviously, this Court found that there was a genuine issue of material fact on a few issues. But this Court, in its opinion, also said, we're not saying they're going to be able to prove it. And I continue to believe that's our best defense, ultimately, that they will never be able to prove all the prongs, all the indicia of a joint venture. Counsel, you started out by saying this case involves prejudice, without specifically commenting on the law-of-the-case doctrine. And I'd ask you to respond to counsel's comments that he believes that law-of-the-case does apply here. And would you, I take it you don't believe that law-of-the-case should apply here? And would you include in your comments any discussion of law-of-the-case by implication? Well, if you're talking about the law-of-the-case being that we are barred from ever asserting that, I respectfully, recognizing that you brought the opinion, did not hold that going forward. Everything was in the context of the appeal. And it was prejudiced to the plaintiff, or you can certainly argue it, for them to have to confront that issue without it actually being raised by the litigants. But there's nothing in your opinion, respectfully, that talks about the prejudice going forward. We're not close to done with discovery. We're not near a trial date. There's nothing that prejudices the plaintiff. And that's why they raise these procedural arguments. How would you, if you don't believe that, at the very least, the doctrine of or the aspect of by implication applies here, can you give me an example of a situation where it would apply, if it doesn't apply here? I mean, maybe we don't have the specific language that they're barred going forward. But, again, looking at 105 and 106 and opposing counsel's discussion with respect to that, what does law of the case by implication mean? What's an example of it? Well, I don't think that that discussion applies to the case going forward, to after remand, if I understand your question correctly. It's a clearly logical analysis in the context of the appeal, that particular procedural point in the case. But there's no discussion of going forward. There's no indication of why it should apply going forward. That's a different set of circumstances. And I don't think that's what the court held or held by implication. There was no discussion of it in oral argument either. That's correct. In light of one effect, there was a comment from my colleague, Justice Zinoff, that it has to be raised below in the trial court. The trial court should not have ruled or raised it suspended. Right. And I think the same argument applies to a holding on asserting that affirmative defense on remand. It was never before the court. It would be unfair for the court to rule on that at that point when the issue was never raised and the parties had never ruled on it. Well, except ITW contended that the provision. I mean, I think there was a need to respond to ITW's contention that the provision provided an alternative basis to affirm the entry of summary judgment. And so I think the discussion that follows directly certainly relates to that. Anyway, I was going to make the other points. I'm not sure we're going to take minutes. If we turn to the Loyola factors very quickly, we've briefed it extensively in detail inside of the other cases that interpret the Loyola factors. Again, the standard on review with respect to this part of the case is an abuse of discretion, and I don't think you can say the trial court below abused her discretion in how she ruled. Her opinion is a very careful analysis of the factors. She goes into great detail, and I don't think there's any way you can call that an abuse of discretion. Again, we come to prejudice, which is kind of the core of the Loyola factors. And again, there's no demonstration of any prejudice to the plaintiff. And, you know, the goal here obviously is to do justice, and that's to allow all parties to avail themselves of all the applicable laws. And there's no prejudice, and there may be detriment, but there's no prejudice to the plaintiff. And you're not conflating prejudice with timeliness here? No, and we've cited some cases that talk about that. Again, timeliness, you have to look at it in context. I know it's been 10 years. I know they're waiting a long time for their ultimate day in court if we get there. But the cases say that alone is not prejudice. That would be conflating the two. You have two separate factors. One is timeliness and one is prejudice. Right. And, I mean, clearly a lack of timeliness can cause prejudice if witnesses die or something like that. But, I mean, passage of time alone goes to timeliness and not necessarily prejudice. That's correct. And prejudice doesn't include expense or unnecessary expense in retaining certain experts, for example, and then being faced with a totally different issue with respect to a new affirmative defense. That's not prejudicial. There's a case we cited that addresses that precisely, that added expense, increased expense incurred does not constitute prejudice in a legal meeting under Illinois law. This case, for summary judgment one, there were multiple theories against Illinois toolers. There were three other defendants. There were a lot of depositions on the joint venture issue, a lot of depositions on the duty and legal issues. Those depositions would have proceeded even if the affirmative defense had been asserted earlier. And remember, it was asserted by the employer, Western Plastics. And for some reason, they never filed a motion. They went through all this litigation. They went through all 40 depositions. And there was a comp claim filed. I believe the payments stopped for some reason, for whatever reason. But eventually, at the time of the summary judgment hearing leading to HIA 1, they settled and they settled the comp claim. Right. So what happened before really wasn't relevant at all to what the issues were in front of this court at the time. Correct. But I'm addressing your expense question. There were a lot of things swirling around. There were a lot of depositions. They would not have been obviated if the affirmative defense had been presented by us earlier. Okay? Thank you. Very good. Thank you very much. Mr. Bruce? Thank you, Justice. Just a few follow-up comments. First of all, I embrace Mr. Mathewson's concession before you that this case comes down to prejudice because unless you're going to ignore the rule of law, which was not disputed in these cases, you have that Radwell decision versus Manor Care, which is directly on point secondary case, which says the rule of law applies not only to the trial court but to this court as well. And this court did rule and say it was prejudice. So I will embrace what Mr. Mathewson said at that time because it has to be mitigated in the trial court. I mean, Justice, I'll build on that point. If it was prejudice in five years and 40 depositions and fact discovery closed, as Justice Zinoff said, I agree. I mean, it's so logical, right? If it was prejudicial in 2014, it sure as heck is prejudicial in 2018. I mean, my client wants to stay in court. And Mr. Mathewson just said something important, and I agree with it. Look, he said they feel very confident. They feel very confident that they're going to win on this joint venture issue at trial. That's what he just said. That's the issue that they pursued this defense on. They rolled the dice and lost. If I was standing up here, Justice, and so let them have that day in court. Let them prove that there was not a joint venture there. That's all I'm asking is for this man to have his day in court. That's all I'm asking for. A couple of key points. Justice Birch, I think you hit the nail on the head about the distinction between not conflating prejudice and timeliness. Now, Justice Birch, you've asked several times today about this relief. I always try to be candid. If I don't know something, I'm not going to make it up to tell you the answer. I will have to go back and look. Many times in my appellate court briefs, I do ask at the end for whatever other relief the court deems necessary. I didn't bring those because I didn't think we were going to be relitigating that issue. I really respectfully, whether or not we ask for that relief or not, that's not really before us. When you're examining a case, an opinion to decide whether or not the law of the case applies, you look at the language of the opinion, what's in the mandate, what's the relief requested by the parties, what were the issues that were litigated. Well, I certainly took the position that they couldn't have failed us. That was the genesis of my question. I understand. And I understand that now. I certainly took the position then and now that the exclusive remedy provision, they should not be able to avail themselves of the exclusive remedy provision. I took that position. I'm now taking a position that if you look at your previous opinion, that it's there. There's a couple new issues that came up, so that's important. After remand, Mr. Mathewson said there's a lot of stuff going on. I'm the only person that's ever shown up in court or any deposition on this case. I know exactly what was going on. There was nothing going on. Okay. The case came back down before the trial court, and then Mr. Mathewson said early on, mandate issue, I'm going to file a motion to bifurcate. Okay. So the mandate's issued. Now, one could argue that a motion, a simple one-sentence motion, motion for leave to amend affirmative defenses, and add this, if they truly believed that this was not, if they truly believed that this court's previous ruling didn't bar the exclusive remedy provision, but they waited another 14 months before they filed that motion for leave to file affirmative defenses. There's nothing that precluded them from doing that. I just don't want the court to be mistaken. There's nothing, stuff going on. There's nothing that, you know, he wanted to have a motion to bifurcate. Now, the settlements. Now, I wrote down here. I've got Celtic background, Justice Berg. I wrote down here malarkey. I wrote malarkey. It was malarkey when he's saying the reason why we didn't pursue the exclusive remedy provision was because Western Plastics had pursued it, and why were they still in the case litigating? They ran the case because I pursued a dual-capacity doctrine theory of liability because I felt I had a good-faith basis because they constructed the machine.  And even assuming that that wasn't the case, even if I didn't pursue the dual-capacity doctrine, that doesn't make any sense at all. This is a significant injury case. We have ITW. It's a multi-zillion-dollar company. They have very competent counsel. They're not going to rely upon somebody else telling them what defenses they should pursue or not pursue. That's malarkey. My comment was geared toward once the workers' comp was settled, that maybe they felt emboldened that they wouldn't be on the hook for workers' comp as a joint venture. But, Justice, that's a red herring. There's nothing to do with it. I'm not trying to be dismissive. But, I mean, I do this all the time. If these defendants think they have an exclusive remedy provision, by God, they pursue it. And they write that thing in the affirmative defense. I see it all the time. And I deny it, and we go on. And they've raised the issue. You have to raise the issue. You have to raise the issue. I don't think, you know, timeliness. I don't know that anybody's contesting that they didn't have opportunities earlier to raise it. But you have to do it timely. You don't even get to the, I mean, we're all factors as one basis. But, you know, you have to raise an affirmative defense timely, and they don't do that. Real quickly, you know, I don't, maybe I misheard Mr. Madsen. The fact discovery in this case was closed before we came up here last time. I mean, so I just want to be clear on that. Okay. Oh, and this law of the case, you asked, Justice Enoff, I did not think, and before I just heard his argument, that we were arguing about the law of the case as it applies to this court's previous ruling. I thought that was pretty established. They did not contest that. I cited your Radwell decision, which is just basic Hornbook law. The first opinion, whether we like it or not, Justice, right, those aspects, whatever the ruling was, that we have to go by. And I just want to be fair. That's it. Oh, no. These are my concluding just sentiments. I just was thinking about this last night. To rule in ITW's favor, and I think this, we all have to agree on this. I mean, I think I'm going to say some very basic propositions. To rule in ITW's favor, first, we have to conclude that the previous ruling didn't apply. Okay.  There was a strategic decision, 40 deaths, 5 years, prejudicial, to raise it now. We have to say that that didn't apply. We then must find that all four of the elements are in favor of the defense, that by including a defense that they never included before by intent, that that's curing a defect. You have to find that it wasn't prejudicial after years and years of litigation, raising it for the first time from 09 to 16, that that's not prejudicial. And you have to disregard the court's opinion. You have to conclude that there were not previous opportunities to amend. And you have to conclude, Justice Rickett, that it was timely. That's what the Supreme Court, you have to, so you have to disregard the first opinion. You have to find the four factors for the most effective law. All four of the factors have to be found in favor of the defense. I looked that up last night. Yeah. Okay. And then lastly, you have to find, and nobody's really, I mean, we haven't had a lot of questions on this. And I think it's an important point, and I don't want it to get lost in the shuffle. And I started, and I think I ran out of time last time. This is not a throw-in argument about this motion for summary judgment before the trial court. I'm not disputing, and if you go back and read their briefs, let me just say what I'm not disputing. I'm not disputing that people can have multiple summary judgments. That's not the, and he's got case law on that. I'm not disputing that. What I'm disputing here is that they have one motion for summary judgment. They threw everything at it they could, and they lost. They then came back down, they waited 14 months, and they raised this thing. And when they raised this thing, then they filed a motion for summary judgment, Justice, and there was not, there was nothing attached to it. I've never seen that. There was no affidavit, no deposition, no authenticated documents. There was nothing. 2105C is so crystal clear. So you have to rule and find that it was okay. And you say, well, it's abuse of discretion. I know that. That's an event. When does it end for this man? When, how many breaks are we going to give them to file what even the trial court, because she doesn't agree with me on much. I'm sorry. And thank you for your time today. Thank you, counsel. At this time, the court will take the matter under advisement and render a decision in due course.